IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT LAFFERTY,                   :      No. 3:10cv2465
            Plaintiff        :
                             :      (Judge Munley)
    v.                        :
                             :
UNUM LIFE INSURANCE        :
COMPANY OF AMERICA,    :
            Defendant     :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition are cross motions for summary judgment in this case wherein Plaintiff Robert Lafferty seeks long term disability benefits under his employer's plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant Unum Life Insurance Company of America both insured and administered the plan. The issue we must decide is whether defendant abused its discretion in denying the benefits. The parties have briefed their respective positions and, the motions are ripe for decision.

**Background**

The general background facts are undisputed. Defendant issued to plaintiff's employer a group insurance policy including coverage for long term disability. Plaintiff sought long term disability benefits under the policy alleging a disabling cardiac disorder. Defendant denied the benefits on the basis that plaintiff's cardiac disorder was a pre-existing condition and thus

not covered under the policy.[1]  After exhausting his administrative remedies, plaintiff instituted the instant action alleging that he is indeed entitled to the long term disability benefits.  Plaintiff's complaint seeks the following relief: 1) an order that defendant pay him long term disability benefits; 2) prejudgment interest on the award until the date of the judgment; 3) attorney's fees and costs; and 4) other and further relief as the court deems just and proper.  (Doc. 1, Compl. *Ad Damnum* Clause, foll. ¶ 21).  At the close of discovery both parties moved for summary judgment.  They both argue that the administrative record supports their respective positions.  After a careful review, we find that the plaintiff should be awarded benefits.

**Jurisdiction**

As this case is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")[2]

---

[1] Plaintiff also made a claim for disability benefits based upon a back disorder.  Defendant denied the claim for benefits.  That claim, however, is not advanced in the instant case and we will not discuss it further.   The issue involved is "whether Plaintiff's congestive heart failure was a pre-existing condition." (Doc. 31, Pl. Mem. in Supp. Mot. for Summ. Judg. at 7). "The evidence of record demonstrates that the Plaintiff is totally disabled from his job as an engineering director because of the implantation of the ICD as the Plaintiff would not be able to be in close proximity to electrical machinery." (Doc. 32, Pl.'s Statement of Mat. Facts ¶ 20).

[2] In pertinent part, the text of 29 U.S.C. § 1132(a)(1)(B), involving ERISA claims, is as follows:
"§ 1132. Civil enforcement

2

**Summary judgment standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party

---

(a) Persons empowered to bring a civil action. A civil action may be brought--
(1) by a participant or beneficiary--
...
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"

moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**ERISA standard of review**

In reviewing decisions of ERISA plan administrators or fiduciaries we apply a deferential abuse of discretion standard of review.[3] Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115-16 (2008)). If the entity deciding to grant or deny benefits has any conflict of interest, we consider that conflict as one of several factors in determining whether the administrator or the fiduciary abused its discretion. Id.

An abuse of discretion has occurred where the plan administrator's decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Doroshow v. Hartford Life and Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009). "This scope of review is narrow and the court is not free to substitute its own judgment for that of [the plan administrator] in determining eligibility for plan benefits." Id. (internal quotation marks and citation omitted).

---

[3]The Third Circuit Court of Appeals has used the phrases "abuse of discretion" and "arbitrary and capricious" interchangeably in describing the standard of review. Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010). We will use the phrase "abuse of discretion."

4

**Discussion**

The issue before the court is whether the defendant abused its discretion in denying long term disability benefits to plaintiff on the basis that his alleged disability amounted to a "pre-existing" condition, and thus was not covered by the plan. The parties agree that the disability insurance plan is an employee benefit plan within the meaning of, and governed by, ERISA. The parties do not dispute most of the pertinent facts.     Plaintiff served in a management position at Bon Secours Community Hospital ("Bon Secours"). Bon Secours had a long term disability benefit plan insured and administered by the defendant. Generally, the plan provides that a management employee is "disabled" when he is "limited from performing the material and substantial duties of [his] own job due to [his] sickness or injury." (Doc. 21, Def. Appx. at 200) (emphasis removed).[4]  Plaintiff worked the required number of hours per

---

[4]Specifically the plan provides:

> ***HOW DOES UNUM DEFINE DISABILITY?***
> **All management of Bon Secours Health System, Inc. in active employment in the United States with the Employer, excluding employees covered under the 1199 Collective Bargaining Agreement and Executives**
> You are disabled when Unum determines that
>  - you are **limited** from performing the **material and substantial duties** of your **own job** due to your **sickness** or **injury**, and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
> (Doc. 21, Def. Appx. at 200).

5

week in his management position to be covered by the plan.  (Pl.'s Statement of Material Facts ("Pl. SOF") ¶ 6; Def. Answer to Pl. SOF ¶ 6). The policy excludes pre-existing conditions from coverage.  (Pl. SOF ¶ 7). If an employee received treatment for a condition within three months of the policy taking effect, then it is considered a pre-existing condition and long term disability coverage is not available.  This three month period before the effective date of the policy is called the "look-back period." [5] (Doc. 21, Def. App. at 208).

In September 2009, doctors diagnosed plaintiff with congestive heart failure and in December, they performed surgery to install an implantable cardioverted defibrillator ("ICD") or pacemaker.  (Doc. 32, Pl. SOF ¶ 16; and Doc. 33, Def. Answer to Pl. SOF ¶ 16).  Plaintiff asserts that this heart condition and the pacemaker render him disabled from working under the plan.  He thus made a claim for long term disability benefits.  The claim was initially denied and plaintiff appealed to defendant's appeals unit.  The

---

[5] It is not clear exactly when plaintiff starting working for Bon Secours so as to start the look back period.  It is either November 2008 when plaintiff was hired by Bon Secours for a special project, or January 2009 when he was hired full-time.  Regardless, of which date is used, however, defendant would have denied the benefits for the same reason.  Therefore, we need not decide which date is the official start date.

Also, plaintiff evidently worked for Bon Secours before November 2008 and was laid off and eventually re-hired.  He asserts that he was told by his employer that the disability insurance coverage would "bridge the gap" between when he was laid off until he was rehired.  Therefore, the look back period would not apply or the look back period would run from some other date, the date he was originally hired.  This issue, however, is not raised in this case.

appeals unit issued a decision in October 2010, denying the appeal on the basis that the heart condition amounted to a pre-existing condition under the plan.  (Doc. 29, Def. App., Appeals Decision, 1322-27).   Plaintiff then filed the instant suit asserting that "[t]he evidence in the Claims file demonstrates that the Plaintiff's congestive heart failure and consequent need for an ICD was not a pre-existing condition and, therefore, UNUM's to deny the Plaintiff's long term disability benefits was arbitrary and capricious."  (Doc. 30, Pl.'s Mot. for Sum. Judg. ¶ 8).

The policy at issue defines pre-existing condition, in pertinent part, as:

"You have a pre-existing condition when you apply for coverage when you first become eligible if
- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the **3** months just prior to your effective date of coverage[.]"
(Def. App. at 208).

The original denial of benefits indicated that plaintiff had a pre-existing condition because during the look-back period, he had been treated for "hypertension and hypercholesterolemia.  The use of aspirin was also evident during this time period.  The medication management evident during the look-back period, combined with a known history of [coronary artery disease "CAD"] is consistent with the management of CAD."  (Doc. 28, Def. App. at 1198).   Similarly, the defendant's appeals unit concluded that:  "While [plaintiff] was not treated for heart failure during the look back periods, treatment of hypertension and [high cholesterol] in a patient who has a history of coronary bypass surgery and the use of aspirin

for its antiplatelet effect, he was clearly receiving treatment for underlying coronary disease." [sic] (Id. at 1324).  We find that this decision is an abuse of discretion, that is, it is absent reason and it is not supported by substantial evidence.  In making this decision we acknowledge that the defendant has an inherent conflict of interest in that it acted as both the claims administrator and insurer of the subject plan.[6]  Additionally, all of the analysis that it relied upon in reaching its decision was provided by those working for or hired by the defendant to make such an analysis.

Bearing these factors in mind, the facts simply do not support the defendant's decision.   During the look-back period, plaintiff was taking high cholesterol medicine and hypertension medication.  Additionally, he had evidently been taking daily aspirin since heart surgery in 1999.  These are the facts that are repeatedly relied upon in defendant's various reviews of plaintiff's claim to justify denial of this claim.

Plaintiff, however, does not assert that he is disabled from high cholesterol, hypertension or the effects of the heart surgery he had in 1999.  Rather, he asserts he became disabled by September 2009, approximately nine months *after* the effective date of his coverage.  At that time plaintiff's doctor diagnosed him with congestive heart failure.  Upon his doctor's recommendation plaintiff had a pacemaker implanted.  Nothing in the administrative record suggests that plaintiff was treated for congestive heart failure in the three-month look-back period.  In fact, the doctor reviewing the records for the defendant indicates that plaintiff was *not* treated for congestive heart failure during the look-back period.   (Doc. 29,

---

[6]Defendant concedes this conflict. (Doc. 37, Def. Mem. In Opp'n at 14).

Def. App. at 1324).

It is helpful to analyze several cases from the Third Circuit Court of Appeals to explain our conclusion. The first is McLeod v. Hartford Life and Accident Ins. Co., 372 F.3d 618 (3d Cir. 2004). In McLeod, the plaintiff sought long term disability benefits under an ERISA plan after she was diagnosed with multiple sclerosis ("MS"). Id. at 621. The plan excluded pre-existing conditions. Id. Just as in the case before the court, the ERISA plan in McLeod contained a look-back provision to determine if a condition was pre-existing. If during that look-back period the employee was treated for the ailment, then coverage was not available. Id. During the look-back period, the plaintiff had consulted with her doctor regarding numbness in her left arm. She received treatment for the numbness, but was not diagnosed with, nor was it suggested that she suffered from, MS. Months later, plaintiff was diagnosed with MS and physicians concluded that some of the symptoms she had during the look-back period, namely the numbness in her arm, had been due to the disease. Id. 621-22. The diagnosis came four months after the effective date of coverage for long term disability insurance. Id. at 622. The insurance company denied benefits on the basis that when she had seen the doctor for numbness in her arm, she received medical care for symptoms relating to the MS. Id.

The Third Circuit concluded that a denial of benefits was inappropriate. Although, the plaintiff in McLeod had been treated for various ailments for the years before she was diagnosed with MS, no tests performed during that time linked the symptoms she had with MS. Thus, she could not be said to have been treated for MS, and the insurance company's denial of benefits was arbitrary and capricious. Id. at 628. In

reaching this conclusion, the court noted that "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." Id. at 624 (internal citations and quotation marks omitted).   The court then reasoned that if the insurance company's arguments were accepted then "any time a policy holder seeks medical care of any kind during the look-back period, the 'symptom' that prompted him to seek the care could potentially be deemed a symptom of a pre-existing condition, as long as it was later deemed consistent with symptoms generally associated with the condition eventually diagnosed." Id. at 625.   Such a ruling would inappropriately expand the definition of "pre-existing." Id. at 627-28.

    Another case that provides us with guidance is Lawson v. Fortis Ins. Co., 301 F.3d 159 (3d Cir. 2002).  In Lawson, two days prior to the effective date of her health insurance policy the plaintiff, a child, was treated for a respiratory tract infection.  Id. at 160.  After the effective date of the policy, the "respiratory tract infection" was discovered to actually be leukemia. Id. The plaintiff sought benefits under the health insurance policy for the leukemia, but the insurance company denied benefits on the basis that it was a pre-existing condition that for which the plaintiff had been treated before the effective date of the policy.  Id.  The court found that the decision made by the insurance company was inappropriate.  Prior to the effective date of the insurance policy, the plaintiff had been diagnosed with, and treated for, a respiratory tract infection, not leukemia regardless of whether it was later determined that she actually had leukemia.  Id. at 166

    In support of its position, defendant cites Doroshow v. Hartford Life and Acc. Ins. Co., 574 F.3d 230 (3d Cir. 2009).   The plaintiff in Doroshow

10

was diagnosed with amyotrophic lateral sclerosis ("ALS") and sought long-term disability benefits from his insurance plan which was governed by ERISA. Id. at 231-32. The court addressed whether the ALS was a pre-existing condition so as to bar benefits. The plan described a pre-existing condition as one for which treatment or advice was rendered within twelve months look-back period prior to the effective date of the insurance. Id. The court focused on whether the plaintiff had obtained "advice" regarding the disease within the appropriate time frame. During the look-back period, the plaintiff had visited his primary care physician, who diagnosed him with motor neuron disease. At that time, however, the doctor did not believe that he suffered from ALS. Id. at 232. Based upon a family history of the disease and symptoms he had been experiencing, plaintiff had previously during the look-back period discussed the disease with medical professionals and been tested regarding the disease. Id.

The court focused on whether the plaintiff had received "advice" during the period regarding ALS. Id. at 234-35. The court found, that although, plaintiff had not been diagnosed with ALS during the look-back period he had been provided "advice" based upon the fact that plaintiff had shown signs of the disease, had tests performed to determine whether he had it and two doctors had previously considered ALS as a potential diagnosis. Thus the insurance company was reasonable in concluding that benefits were not warranted because he had received "advice" on the condition during the look-back period rendering the disease a pre-existing condition. Id. at 235.

Citing McLeod and Lawson, the plaintiff in Doroshow argued that "ruling out" a condition did not constitute "advice" on that condition. Id. at

235-36.  The court rejected this argument.  The Third Circuit indicated that McLeod supported the conclusion that "seeking medical care for a symptom of a pre-existing condition can serve as a basis for denying coverage when there is some 'intent to treat or uncover the particular ailment which causes the symptoms (even absent a timely diagnosis), rather than some nebulous or unspecified medical problem.'"  Id. at 235 (quoting McLeod, 372 F.3d at 628).  The Court found that Lawson, stood for the proposition that a misdiagnosis or an unsuspected condition manifesting non-specific symptoms, during the look-back period does not create a pre-existing condition.  The insured had been treated for a respiratory tract infection, when in fact, she suffered from leukemia.  As leukemia was not even considered as a possible diagnosis, it was not a pre-existing condition.  Id. at 236.[7]

McLeod, Lawson and Doroshow, generally inform this court's decision, but none of them are on point directly.  In all these cases, the insureds had some symptom for which they sought treatment.  Here, plaintiff was asymptomatic, and received treatment for disorders that could lead to a condition, coronary artery disease, which could lead to the allegedly disabling condition of congestive heart failure and the placement of the pacemaker.   The defendant concluded that treating these underlying disorders rendered defendant's heart failure/placement of the pacemaker a pre-existing condition.  We find this decision is an abuse of discretion.

Unum Medical Consultant Peter G. Kouros, Doctor of Osteopathic

---

[7]Notably, Circuit Judge Rendell wrote a vigorous dissent indicating that the majority opinion in Doroshow disregarded the precedent of McLeod and Lawson.  Doroshow, 574 F.3d at 236-38 (Rendell, J., dissenting).

Medicine, reviewed the medical records and the social security record for the defendant. (Doc. 28, 1190-95). The question presented to Dr. Kouros by Unum was: "Did the claimed disabling illness congestive heart failure/coronary artery disease/injury in fact exist during the look back period?" (Id. at 1193).

Dr. Kouros answered the question, by first indicating that congestive heart failure and coronary artery disease are two separate conditions. He explained as follows:

> Congestive heart failure is a condition where the heart is unable to pump sufficient blood to the body's other organs. Different conditions can cause congestive heart failure. The most common causes include coronary artery disease and hypertension. . . . There is no clear and convincing evidence of congestive heart failure during the look-back period. This is based on a lack of symptoms or diagnostics consistent with this diagnosis. . . .
> The condition of coronary artery disease (CAD) can be defined as a narrowing of the arteries that supply the heart. This condition was known to be present as of at least 1998 when the [plaintiff] underwent a 4-vessel bypass. The treatment of CAD focuses on the reduction of risk of further events and progression. This is accomplished by controlling hypertension, reducing cholesterol, adding Aspirin to reduce the risk of heart attack, and discontinuing smoking. . . . The medical records in the look-back period reflect management of the conditions associated with CAD[.]

(Id. at 1193)

Thus, the treatment plaintiff received during the look-back period was for management of the conditions associated with CAD. (Id.)

Costas Lambrew, M.D., also conducted a review of plaintiff's medical records for the defendant. Dr. Lambrew found that although plaintiff had coronary artery bypass graft ("CABG") surgery in 1999, "[f]rom a cardiac standpoint, he had been stable since then and had not seen a cardiologist in the last ten years." (Id.) Prior to the heart failure, during the look-back

13

period, plaintiff had been on medicine for high cholesterol and hypertension. He was also taking aspirin for stroke and heart attack prevention. (Id. at 1298). "While he was not treated for heart failure during the look back periods, treatment of hypertension and hyperlipidemia in a patient who is post CABG, and use of [aspirin] for its antiplatelet effect, is clearly indicated as treatment for underlying coronary disease." (Id. at 1301). As noted, however, Dr. Lambrew concedes that plaintiff was not treated for heart failure during the look-back period, and treatment of coronary artery disease is done to *prevent* the development of heart failure. (Id. at 1315-1316).

The issue, therefore, is whether treating disorders that could lead to another disorder is actually treating the second disorder. In other words, is taking steps to prevent a disorder the equivalent of treating that disorder. We find that it is not and that the defendant's denial of benefits was an abuse of discretion.

Plaintiff's doctors did not diagnose him with heart failure during the look-back period. No evidence indicates that they suggested during the look-back period that he have a pacemaker installed. The record does not indicate that plaintiff's doctors performed any diagnostic tests with regard to his heart condition. He had no coronary symptoms during the look-back period. He may have had the an undiagnosed heart problem during the look-back period. However, the plan does not define "pre-existing" in terms of whether evidence exists that plaintiff had the condition during the look-back period, but whether he was treated for the condition during the look-back period.

With regard to treating symptoms, McLeod found that

> considering treatment for symptoms of a not-yet-diagnosed condition as equivalent to treatment of the underlying condition ultimately diagnosed might open the door for insurance companies to deny coverage for any condition the symptoms of which were treated during the exclusionary period. To permit such a backward-looking reinterpretation of symptoms to support claims denials would so greatly expand the definition of preexisting condition as to make that term meaningless: any prior symptom not inconsistent with the ultimate diagnosis would provide a basis for denial.

McLeod, 372 F.3d at 627-28 (internal quotation marks and citation omitted).

Likewise, considering treatment of conditions that might lead to other conditions would expand the definition of pre-existing condition so as to make the term meaningless. Any advice or treatment by a doctor that might be use as a preventive measure could be seen as treatment of a later diagnosed condition and provide the basis for denial. For example, if a doctor told a patient to quit smoking, exercise more or lose weight for the health of his heart, and that patient suffered heart failure, the fact that the doctor had advised him to quit smoking, exercise more or lose weight could be construed as treatment for the heart failure. The term "pre-existing condition" would be so far expanded as to be meaningless.

**Conclusion**

For the reasons set forth above, that the defendant abused its discretion in denying long term disability benefits to the plaintiff. Accordingly, plaintiff's motion for summary judgment will be granted, and the defendant will be ordered to provide long term disability payments to the plaintiff. The defendant's motion for summary judgment will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT LAFFERTY,** | : | No. 3:10cv2465 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **UNUM LIFE INSURANCE** | : | |
| **COMPANY OF AMERICA,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 29TH day of February 2012, it is hereby **ORDERED** as follows:

1) Plaintiff's motion for summary judgment (Doc. 30) is hereby **GRANTED**, and the defendant shall pay plaintiff all outstanding long term disability benefits due under policy number 596672;

2) Defendant's motion for summary judgment (Doc. 18) is **DENIED**;

and

3) The Clerk of Court is directed to close this case.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**